E.D.N.Y. LBR 9004-2(c)
Hearing Date and Time:
June 16,  2011 at 10:00 a.m.

Dennis Houdek, Esq.
305 Broadway, Fourteenth Floor
New York, New York  10007
(212) 822-1470

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

                                      Chapter 7 Case No.
                                      8-10-70784-dte

In re:

HARLIN T. SCHWARTZMAN,

                Debtor.

----------------------------------------------------------X

Andrew M. Thaler, Chapter 7 Trustee for
The Estate of Harlin T. Schwartzman,

                Plaintiff,

        -against-                                  Adv. Proceeding No.
                                      8-11-09054-478

Harlin T. Schwarzman a/k/a/ Harlin
Schwarzman,

                Defendant.

----------------------------------------------------------X

# APPLICATION TO WITHDRAW AS DEBTOR'S COUNSEL

DENNIS HOUDEK, ESQ., an attorney duly admitted to practice before the Courts of the State of New York and this Court, affirms the truth of the following statements under the penalties of perjury:

1.    I am currently the attorney of record for the Debtor and Defendant Harlin T. Schwarzman ("Debtor" hereinafter), and as such I am fully familiar with all of the facts, circumstances and background of this Chapter 11 proceeding.  I submit this Affirmation in support of my motion for an order (i) pursuant to EDNY LBR 2090-1(d) permitting me to withdraw as counsel of record for the Debtor in both the above-captioned reopened Chapter 7 case and the above-captioned Adversary Proceeding; and (ii) granting me such other, further and different relief as the Court may deem just and proper.  No prior application for this relief has been made by me.

2. Before turning to a discussion of the reasons for this application, I note that, in an effort to reduce the burden on this Court, this Affirmation  will not duplicate unnecessarily as Exhibits documents that are available on-line as part of this Court's file, as this Court can and must take judicial notice of the contents of its own file.  See, e.g., Federal Rule of Evidence 202, made applicable to Bankruptcy Courts by Federal Rule of Evidence 101; In re Aerial Transit Co., 190 Bankr. 464 (Bankr. S.D. Fla. 1990) (judicial notice should be taken so as not to "grind the same corn twice"); In re Applin, 108 Bankr. 253 (Bankr. E.D. Cal. 1989) (judicial notice of "basic filings" in bankruptcy proceeding).

3.    I was the  attorney for the Debtor Harlin Schwartzman when this case was closed on or about May 11, 2010.  See Docket Nos. 22 (Discharge) and 24 (Final Decree) herein. The morning of Tuesday, May 24, 2011 I was forced to hurriedly throw together

an Affirmation in response to the Order to Show Cause that had just been served on me

by Marlene Ben-Baruch (Docket No. 37 herein is that Order to Show Cause ) to explain

to the Court the several dilemmas then facing myself.  My Affirmation in response to the

Order to Show Cause, which is before the Court as Docket No. 39 herein, set forth the

factual background to this application, and this application is a follow-up to that

Affirmation.  This application is being filed the Sunday of Memorial Day weekend, a

mere three (3) business days after my Affirmation, and is being filed and served on a

holiday weekend to give the Debtor the maximum time to respond.

4.  As noted previously, I was the attorney for the Debtor when the case was closed

on or about May 11, 2010. During that time, despite numerous promises of payment, only

the $299 filing fee was paid none to me by the Debtor—none of my $3,210 fee was paid

by the Debtor. This is confirmed by the answer to Question 9 to the Debtor's Statement

of Financial Affairs (Docket No. 11 herein), which lists the date of any "[p]ayments

related to debt counseling or bankruptcy" as "2/3/10, filing fee only" and states the

"amount of money" paid as ""$299 filing fee".

5.  In addition, I have had no contact with the Debtor in just under one (1) full year.

The last time I was even able to get the Debtor's voice mail was on July 20, 2010, at

approximately 12:09 pm, just over ten (10) full months ago, when I left him a voice

message pledging to sue him for my fee. The last time I was able to get the Debtor on the

phone was July 1, 2010 at 1:15 pm, when he informed me that he was his son's baseball

tournament in Delaware, would be back Monday, July 6, 2010, and would call me on that

date. Of course, that date came and went with no call from the Debtor.  On June 8, 2010

he pledged to pay me if I "give [him] a week or two". On March 26, 2010 at 8:45 am he

stated he would pay "next week". The contact information that I formerly had for the Debtor is now apparently out-of-date.

6. Unable to contact the Debtor, I thought he would surely contact me once served with the motion to reopen the case, as my contact information has never changed. However, through service on the Debtor of (i) the motion to reopen the case over two (2) full months ago, on March 14, 2011 (Docket No. 26 herein); (ii) Notice of Settlement of the order reopening the case on April 11, 2011, over one (1) full month ago (Docket No. 28); (iii) the 341 meeting notice on April 26, 2011, one (1) full month ago (Docket No. 30 herein); (iv) an Adversary Proceeding Complaint filed on May 9, 2011, now just over two (2) full weeks ago (Docket No. 35 herein); and (v) the aforesaid Order to Show Cause of Marlene Ben-Baruch (Docket No. 37 herein), I have not heard anything from the Debtor. Of course, an attorney is merely an agent for the client, and in the absence of the client/principal, the attorney/agent has no authority to act.

7. Thus, as I pointed out in Paragraph 6 of my Affirmation in response to the Order to Show Cause (Docket No 37 herein, consisting of the aforesaid Order to Show Cause), due to my inability to communicate with the Debtor, I had no idea of the facts underlying the said Order to Show Cause, no idea of what the Debtor's position was with respect to the said Order to Show Cause, and thus no ability to help the Debtor. See Docket No. 39 herein, consisting of my Affirmation in response to the Order to Show Cause, at its Paragraph 6. Of course, the same inability to help the Debtor holds true with respect to the above-captioned reopened case and the above-captioned Adversary Proceeding. Thus, it is impossible to discharge one's duty of zealous representation (DR 7-101) if one does not have a client to communicate with. In addition, I am not sure that

4

I am, as unpaid bankruptcy counsel, adverse to the Debtor's position as the possessor of a potential administrative claim.

8. As pointed out in Paragraph 7 of my Affirmation in response to the aforesaid Order to Show Cause Up (Docket No. 39 hereto, consisting of my Affirmation) until service of the aforesaid Order to Show Cause, I did not think this issue was even relevant and required any action on my part, as all prior documents had either explicitly or implicitly listed me as the Debtor's "former attorney". Paragraph 24 of the March 14, 2011 Affirmation of the Chapter 7 Trustee, Andrew M. Thaler, Esq., in support of his motion to re-open this case (Docket No. 26 herein), states in its first sentence that "[d]eponent has served a copy of this Affirmation and Notice of Motion upon the United States Trustee, the debtor, Harlin T. Schwartzman, the Debtor <u>c/o his former bankruptcy attorney, Dennis Houdek, Esq.,</u> and Marlene Ben-Baruch with Exhibits." [Emphasis added]. Consistent with this statement, the Affidavit of Service of the motion to reopen listed service on the Debtor as being "c/o" myself. This service on the debtor "c/o" myself, presumed by myself in accordance with Mr. Thaler's statement to be as "former bankruptcy attorney", was continued on (i) the Notice of Settlement of this Court's Order reopening the case, Docket No. 28 herein, and (ii) the May 3, 2011 Affidavit of Service of the entered order reopening this case, Docket No. 34 herein. Accordingly, I was shocked and surprised to see myself named in an Order setting a "Hearing on Shortened Notice" of this Court (Docket No. 37 herein) on its page 2 as "...(2) the above-captioned debtor's counsel, Dennis Houdek, Esq." Not only was this because of my listing as the debtor's "former bankruptcy attorney", but also because (i) at 1:24 pm on April 4, 2011 my office received a voice message from Andrew M. Thaler,

Esq. asking if I would be appearing tomorrow or opposing his motion to reopen the case;

(ii) at 3:31 pm that same day I left Mr. Thaler a voice message informing him that I had

not been paid a dime by the debtor for the prior bankruptcy, and thus was not retained to

represent him in a separate matter, the reopened case; and (iii) I never heard back that my

interpretation of the situation was incorrect.

9.    Indeed, as pointed out in Paragraph 8 of my Affirmation in response to the

aforesaid Order to Show Cause Up (Docket No. 39 hereto, consisting of my Affirmation)

my (necessarily) hurried and quick review of the applicable statutes and rules appeared to

show that their emphasis  is on the reopened case being a matter wholly separate and

apart from the original case, necessitating a separate retainer agreement.  Thus,

Bankruptcy Code Section 350(a) provides that "[a]fter an estate is fully administered and

the court has discharged the trustee, the court shall close the case". [Emphasis added].

Needless to say, the "clos[ing] [of] the case" will logically end my engagement as

Debtor's counsel.  Thus, granting a motion to reopen the case does not alone give

substantive relief, but merely grants the opportunity to request relief.  In re Chalasani, 92

F.3d 1300, 1307-08 (2d Cir. 1996); Accord In re Leach, 194 Bankr. 812 (E.D. Mich.

1996); In re Germaine, 152 Bankr. 619 (B.A.P. 9th Cir. 1993).  Thus, reopening the case

does not "undo" any of the statutory consequences of the closing of the case.  The

automatic stay is not reinstated, the appointment of the trustee is not reinstated, and

property abandoned by statute is not reinserted into the estate.  Menk v. Lepaglia, 241

Bankr. 896 (B.A.P. 9th Cir. 1999).  Similarly, the reopening of the case does not "undo"

the closing of my engagement as Debtor's counsel occasioned by the closing of the case.

10.  Moreover, as pointed out in Paragraph 9 of my Affirmation in response to the

aforesaid Order to Show Cause Up (Docket No. 39 hereto, consisting of my Affirmation)

E.D.N.Y. LBR 2090-1(d) provides that "[a]n attorney who has been …appeared as the attorney of record for any party <u>in any case</u> ….may not withdraw or be relieved or displaced except by order after notice to the party represented, any adversaries (if applicable), the United States trustee <u>and the trustee</u>." [Emphasis added]. Here, "the trustee", in his initial filing with this Court seeking reopening, explicitly listed me as the Debtor's "former bankruptcy attorney", as the underlying "case" had clearly ended.  To the same effect, E.D.N.Y. LBR 2090-2(a) provides that "[t]he attorney of record for a debtor…shall appear on behalf of the debtor in every aspect of the case…<u>during the pendency of the bankruptcy case</u>". [Emphasis added]. Once again, the "trustee", in his initial filing with the Court seeking reopening, explicitly listed me as the Debtor's "former bankruptcy attorney", as it was clear that "the pendency" of the underlying case had ended, thus ending my engagement.

11.  As pointed out in Paragraph 10 of my Affirmation in response to the aforesaid Order to Show Cause Up (Docket No. 39 hereto, consisting of my Affirmation), this emphasis on the engagement ending when the nature of the case changes, such as when a case is reopened,  is underscored by E.D.N.Y. LBR 2090-2(c), which  provides that "[n]otwithstanding the requirements of subdivision (a) of this rule, upon conversion of a chapter 11 or chapter 13  case to a case under chapter 7, counsel for the debtor …<u>is relieved from any further obligation to represent the debtor</u> …in the bankruptcy case". [Emphasis added].

12.  In sum, Paragraph 11 of my Affirmation in response to the aforesaid Order to Show Cause Up (Docket No. 39 hereto, consisting of my Affirmation), concluded that

"(i) I believe I am not Debtor's counsel in this reopened case; (ii) however, if the Court believes otherwise, I will make a formal motion to be relieved as counsel for, inter alia, the reasons set forth above; (iii) if I am somehow still Debtor's counsel, I cannot take any position with respect to the Order to Show Cause due to the Debtor's lack of communication with me; (iv) indeed, due to that lack of communication, I do not have the foggiest notion of what the underlying facts are with respect to that Order to Show Cause, so I cannot contribute any information to aid the Court; and (v) given that lack of knowledge, I believe it would not be ethical for me to do anything other than remain mute with respect to the Order to Show Cause". Since writing that Affirmation, (i) the Order to Show Cause has been heard and denied; (ii) the scheduled 341 meeting on June 8, 2011 is fast approaching; (iii) the time to answer the Adversary Proceeding complaint is fast approaching; yet (iv) I have heard nothing from the Debtor, I believe I have no choice but to make this motion.

13. This motion is being made on maximum notice time to the Debtor (18 days) to afford him ample opportunity to rectify this situation. That is because there is an underlying reality to this matter, which is that the Debtor will either (i) resurface and contact myself or some other attorney and come in and defend this matter; (ii) resurface and come in and defend this matter pro se; or (iii) default on this matter. This motion is designed to give this situation the maximum time permitted to let the situation resolve itself. Given this reality, there is no reason why the 341 meeting, on for the first time on June 8, 2011, and the answer to the Adversary Proceeding Complaint, due on or about June 10, 2011 with the first conference not until July 7, cannot be adjourned to let the situation play out.

14.  Consistent with this design, this motion is being served on the Debtor by first-class mail to all known addresses, i.e, (i) his address as listed on the petition; (ii)  his last known employers' address; (iii) the address listed on his Schedule A; and (iv) the attorneys in the action that led to the reopening of this case, whose name and address were gleaned by me from elaw.  This service is thus designed to provide maximum opportunity for the situation to resolve itself.

15.  This Affirmation will now turn to a short discussion the numerous ethical rules that compelled me to make this motion. They are listed seriatum and in no particular order.

16.  DR 2-109(a)(2) requires me to decline employment if I "know or it is obvious that [the Debtor] wishes to…[present] a …defense in litigation that is not warranted under existing law".  With no contact with the Debtor, I cannot possibly tell if this prohibition is implicated in this case.

17.  DR 2-110(a)(1) provides that "[i]f permission for withdrawal from employment is required by the rules [of this Court], a lawyer shall not withdraw from employment …without [this Court's] permission".  " Accordingly, I am making this motion in any excess of caution in compliance with this rule despite my belief, discussed previously herein, that I am no longer counsel to the Debtor. Similarly,  DR 2-110(a)(2) provides that "[e]ven when withdrawal is ..permitted or required…a lawyer shall not withdraw from employment until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, including due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable law and rules".

This motion, made on both maximum notice time and with service on every known

Debtor address, is a last-ditch attempt to limit prejudice to the Debtor in compliance with

this rule.

18.  Obviously, DR 2-110(a)(3), requiring me to "refund promptly any part of a fee

paid in advance that has not been earned", has no relevance to this case, as the Debtor has

paid me nothing.

19.  DR 2-110(b)(4) <u>requires</u> me to withdraw  from representing the Debtor if "[t]he

lawyer is discharged by his or her client". Since I have had no contact with the Debtor, I

have no idea whether this rule is implicated herein or not.

20.   DR 2-110(c)(1)(iv) allows me to withdraw if "[t]he client…[b]y other  conduct

renders it unreasonably difficult for the lawyer to carry out employment effectively".  As

discussed previously at length herein, the lack of contact from the Debtor has left me at

sea in responding in this matter. Similarly, DR 2-110(c)(1)(vi) allows me to withdraw if

"[t]he client…[d]eliberately disregards an agreement or obligation to the lawyer as to

expenses or fees". That rule is obviously implicated in this matter.

21.  Similarly,  DR 2-110(c)(5) allows me to withdraw if "[t]he lawyer's client

knowingly and freely assents to termination of the employment".  Again, the lack of

contact from the Debtor makes it unclear whether this rule is implicated in this matter.

Moreover,  DR 2-110(c)(6) allows me to withdraw if "[t]he lawyer  believes in good

faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of

other good cause for withdrawal". Based on all of the above, I believe this Court will find

such "good cause".

22.  DR 4-101(b)(1) prohibits me from "knowingly…. reveal[ing] a confidence or

secret of the client". DR 4-101(b)(2) prohibits me from "knowingly…us[ing] a confidence or secret of a client to the disadvantage of the client". DR 4-101(b)(3) prohibits me from "knowingly…us[ing] a confidence or secret of a client for the advantage…of a third person, unless the client consents after full disclosure". DR 4-101(c)(1) provides that I "may reveal…[c]onfidences or secrets with the consent of the client or others effected, but only after a full disclosure to them". DR 4-101(c)(1) provides that I "may reveal…[c]onfidences or secrets when …required by law or court order". Accordingly, with no guidance from the client, I cannot do anything to defend these matters lest I unwittingly reveal a client confidence in violation of these rules, necessarily requiring me to stand mute and thus robbing me of any ability to effectively represent the Debtor.

23.   DR 5-105 requires me to decline employment if it will involve me in a conflict of interest.  As noted previously herein, I may have an administrative claim for my unpaid fee, putting me in a conflict situation.

24.   Moreover, DR 7-101(a)(3) requires me not to "intentionally…[p]rejudice or damage the client during the course of the professional relationship".  DR 7-102(a)(2) requires me not to "[k]knowingly advance a claim or defense that is unwarranted under existing law".  DR 7-102(a)(5) requires me not to "[k]knowingly make a false statement of …fact".  Again,  with no guidance from the client, I cannot do anything to defend these matters lest I unwittingly reveal violate one of these rules,  necessarily requiring me to stand mute and thus robbing me of any ability to effectively represent the Debtor.

25.   In  compliance with EDNY LBR 2090-1(d), a copy of this Application has been served on the Debtor, all adversaries, the United States Trustee and the case Trustee.

**E.DN.Y. LBR 9013-1(b) REQUEST FOR WAIVER OF BRIEF**

26.    Because all of the legal principles at issue forth herein are black-letter law, it is respectfully requested that the requirement of E.D.N.Y. LBR 9013-1(b) that a memorandum of law accompany this motion be waived.

**WHEREFORE,** for the foregoing reasons the Applicant respectfully prays that this Court grant my  motion in each and every respect,   and grant me such other, further and different relief as the Court may deem just and proper.

Dated:  New York, New York
         May 29, 2011

                                    _s/Dennis Houdek ,Esq. (DH-8466)